**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )   Case No. _____ |
| DANIEL RIVERA, MATTHEW RIVERA and ROBBINS LANE PROPERTIES INC. | ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| DANIEL RIVERA INC. and RIVERA & ASSOCIATES (A/K/A STRATEGIC WEALTH PARTNERS OF NEW JERSEY) | ) ) ) ) |
| Relief Defendants. | ) ) |

**COMPLAINT**

The Securities and Exchange Commission ("Commission" or "SEC") alleges as follows for its complaint against defendants Daniel Rivera, Matthew Rivera and Robbins Lane Properties Inc. ("Robbins Lane", and, together with Daniel Rivera and Matthew Rivera, "Defendants") and relief defendants Rivera & Associates (a/k/a Strategic Wealth Partners of New Jersey) ("Rivera & Associates") and Daniel Rivera Inc.:

**SUMMARY**

1.      Defendants Daniel Rivera and Matthew Rivera, who are brothers, engaged in a fraudulent Ponzi scheme, where Daniel Rivera falsely promised investors they would share in the profits of Robbins Lane, a real estate venture that bought, redeveloped and sold properties. In

1

fact, Robbins Lane, which was owned by Matthew Rivera, was a sham. Daniel Rivera and Matthew Rivera misappropriated investor funds for their personal benefit.

2. From 2008 through at least 2014, Daniel Rivera solicited approximately $2.7 million from approximately 30 investors. Daniel Rivera preyed on a number of elderly, unsophisticated investors, at times recommending that they liquidate other holdings, including retirement assets, to invest in Robbins Lane. Investor funds were deposited into Robbins Lane bank accounts, which Matthew Rivera opened and controlled.

3. Robbins Lane was founded by Daniel Rivera and Matthew Rivera in 2008 purportedly to develop and sell real estate. In reality, Robbins Lane did not have any employees and had no operations.

4. Instead of investing in real estate, hundreds of thousands of dollars of investor funds were misused to pay other investors. The remainder of the funds was misappropriated to enrich Daniel Rivera, Matthew Rivera, and other family members and associates. For example, investor funds were used to purchase tickets for sporting events, to pay for college tuition and sorority dues for Daniel Rivera's daughter, to pay personal credit card bills, for transfers to two entities that Daniel Rivera controlled, Relief Defendants Rivera & Associates and Daniel Rivera Inc., and for transfers to a janitorial business in which Matthew Rivera was a partner.

5. By engaging in the conduct described in this Complaint, Daniel Rivera violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder, which are antifraud provisions, and unless restrained and enjoined will engage in future violations of these provisions.

6. By engaging in the conduct described in this Complaint, Matthew Rivera and Robbins Lane violated Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rules 10b-5(a) and (c) [17 C.F.R. §§ 240.10b-5(a) and (c)] thereunder, which are antifraud provisions, and unless restrained and enjoined will engage in future violations of these provisions.

7. The Commission seeks an order enjoining Defendants from future violations, requiring Daniel Rivera and Matthew Rivera to disgorge their ill-gotten gains plus prejudgment interest, and imposing monetary penalties.  The Commission also seeks an order requiring Relief Defendants Rivera & Associates  and Daniel Rivera Inc. to disgorge their ill-gotten gains.

## JURISDICTION AND VENUE

8. The Court has jurisdiction of this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u and 78aa].

9. Venue is proper in the District of New Jersey pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because many of the acts, transactions, practices and courses of business constituting the violations occurred in this district.  Among other acts in furtherance of the fraudulent scheme alleged herein, Daniel Rivera solicited investors in New Jersey who were offered and purchased securities issued by or through Robbins Lane.  Matthew Rivera accepted into the Robbins Lane bank accounts funds from investors residing in New Jersey and wrote checks to these investors.  Moreover, Daniel Rivera maintained an office in this district that was visited by certain investors in Robbins Lane and that was occasionally used by Matthew Rivera.  One of the Relief

Defendants who received misappropriated investor funds is incorporated in New Jersey and maintains its principal place of business in this district.

10. In connection with the conduct alleged in this Complaint, Defendants directly or indirectly made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

## DEFENDANTS

11. **Daniel Rivera**, age 46, is a resident of Staten Island, New York, who maintains an office in New Jersey. From approximately 1995 to the present, Daniel Rivera has been associated with more than ten registered broker-dealers and/or financial advisors. Daniel Rivera was affiliated with Horter Investment Management, LLC from July 2014 through July 2015, and was affiliated with the firm during some of the time he engaged in the fraudulent conduct outlined in this Complaint. Daniel Rivera also sold insurance products and annuities through Daniel Rivera Inc. and Rivera & Associates.

12. **Matthew Rivera**, age 48, is a resident of Saylorsburg, Pennsylvania. Matthew Rivera founded Robbins Lane with Daniel Rivera, and is its sole owner, sole officer and President. Matthew Rivera works as a contractor for a company that, among other things, provides maintenance services to the railroad industry. Matthew Rivera is also a partner in a Saylorsburg-based company that provides janitorial, landscaping and snow removal services.

13. **Robbins Lane Properties Inc.** ("Robbins Lane") was incorporated in Pennsylvania in March 2008. The company was used as a vehicle through which Daniel Rivera and Matthew Rivera perpetrated their fraud.

**RELIEF DEFENDANTS**

14. **Daniel Rivera Inc.** was incorporated by Daniel Rivera, its sole owner, in New York on June 9, 2008. According to its tax returns, the company's principal business is investment planning.

15. **Rivera & Associates** was incorporated by Daniel Rivera, its sole owner, in New Jersey on November 23, 2011. According to the company's website, Rivera & Associates specializes in retirement income planning.

**DEFENDANTS' VIOLATIONS**

A. **Daniel Rivera And Matthew Rivera Founded Robbins Lane**

16. Daniel Rivera and Matthew Rivera founded Robbins Lane in March 2008.

17. Shortly after founding Robbins Lane, Matthew Rivera opened a Robbins Lane checking account. In May 2012, Matthew Rivera opened a Robbins Lane savings account. Matthew Rivera had control over, and was the sole signatory on, both of these accounts.

18. Robbins Lane never had any employees and engaged in no operations. Robbins Lane never "redeveloped" any real estate, nor did it pursue any real estate investment activities designed to generate returns for its investors. During the entire time that Daniel Rivera was raising money from investors, Robbins Lane never sold or even attempted to sell any real estate. Robbins Lane was instead used as a vehicle to defraud primarily elderly investors in order to enrich Daniel Rivera, Matthew Rivera, as well as their family and associates.

**B.     Daniel Rivera and Robbins Lane Raised Approximately $2.7 Million From About 30 Investors and Daniel Rivera Made False and Misleading Statements to Investors**

19.     Despite the fact that Robbins Lane had no business operations, from 2008 through 2014, Daniel Rivera raised, and Mathew Rivera accepted into the Robbins Lane bank accounts, approximately $2.7 million from approximately 30 investors in Robbins Lane.

20.     Daniel Rivera targeted a number of elderly unsophisticated retirees, some of whom were ill.  He met some investors through his associations with various investment advisory and broker dealer firms.  He met other investors through his insurance business, events he hosted and advertised on websites and in local newspapers, or referrals from acquaintances.

21.     Around the time of Robbins Lane's formation, Daniel Rivera created a Robbins Lane brochure, which Matthew Rivera reviewed.  Daniel Rivera provided the brochure to Robbins Lane investors.  The brochure contains false statements, including that:

- Robbins Lane "provides an opportunity for the senior investor to share in the profits from prudent investments in real estate."

- Robbins Lane "seek[s] out undervalued real estate properties for either resale or redevelopment to make significant profits."

- "Our enduring goal is to provide our investors a viable, guaranteed income stream based on those investments."

- Robbins Lane has "an experienced staff of real estate investment specialists."

- Robbins Lane positions "properties for redevelopment or immediate resale at profit yields markedly above market average."

- "Senior investors are able to share in our investment portfolio by lending us money to invest in real estate."

- "Investing in real estate with Robbins Lane Properties gives the senior investor a guaranteed monthly income for a contracted amount of time."

- Robbins Lane's "rate of return is based on secure real estate investments in the Robbins Lane portfolio."

- Robbins Lane has "a record of success."

22. Each of these statements was false and/or misleading when made to investors. Robbins Lane, in fact, had no real estate portfolio, had never redeveloped or sold any real estate, had no record of success, never had any employees (much less a staff of real estate investment specialists), and had no ability to provide income to investors (much less "guaranteed" income).

23. Daniel Rivera also created the content of a publicly available Robbins Lane website that aimed to attract investors and which Matthew Rivera reviewed. Robbins Lane's website contained the same misstatements as did the brochure that was provided to investors. Additionally, it included purported testimonials from individuals falsely portrayed as having invested in Robbins Lane, including one testimonial from a relative of Daniel Rivera and Matthew Rivera. Matthew Rivera was listed as a contact on the Robbins Lane website.

24. Daniel Rivera recommended that some investors liquidate their existing securities portfolios and other investments, such as annuities or life insurance policies, in order to invest in Robbins Lane, which he falsely represented was an established company that invested in real estate. He also encouraged one investor to take out a mortgage on her home in order to invest over $300,000 in Robbins Lane.

25. Some investors received documents relating to their investments in Robbins Lane that were titled, "Promissory Note." The notes state that Robbins Lane will pay the investor a predetermined amount of principal by a date certain—typically several years after the investment—along with interest.

26. At least one investor received a document titled, "Investment Contract." The Investment Contract falsely claimed, among other things, that Robbins Lane would formulate an "investment strategy" and invest $165,000 on behalf of the investor and further stated that the investor would receive a return equal to "a minimum of" six percent annually.

**C.     Daniel Rivera and Matthew Rivera Misappropriated and Misused Funds Received From Investors**

27.     Investor funds were deposited into, and pooled in, two Robbins Lane bank accounts.

28.     Matthew Rivera was the only authorized signatory on the accounts. Daniel Rivera, however, also exercised control over the flow of funds into and out of the accounts. Specifically, he had online account access, facilitated wire transfers from investors into the accounts, directed that certain payments be made to investors and others from the accounts, and directly wrote checks from the checking account.

29.     As detailed further below, Daniel Rivera and Matthew Rivera misused investor money to pay other investors, and misappropriated funds for their personal benefit or for the benefit of their family and other associates. Daniel and Matthew Rivera directed and/or facilitated each of the payments described below.

   a.  **Funds Used To Pay Other Investors**. Hundreds of thousands of dollars of the funds was misused to pay other investors and create the false impression that Robbins Lane was generating investment returns. For example, in June 2013, an investment of $133,000 into Robbins Lane by one investor funded, at least in part, payments totaling nearly $81,000 to another investor. In another example, in April 2014, investments totaling around $145,000 from two investors were used to pay nearly $120,000 to two other investors the following month.

   b.  **Payments to Daniel Rivera and His Affiliated Entities**. Daniel Rivera and two entities he controlled, Daniel Rivera Inc. and Rivera & Associates, received nearly $800,000 directly from Robbins Lane. Neither Daniel Rivera Inc. nor Rivera & Associates performed any services for or on behalf of Robbins Lane.

   c.  **Payments Benefitting Matthew Rivera**. Matthew Rivera also misused investor funds. For example, in June 2011, Matthew Rivera issued a check from Robbins Lane to himself for $60,000. In December 2011, he wrote a check from Robbins Lane to his janitorial business for $40,000, purportedly as

8

a loan.  After the Commission began its investigation, Matthew Rivera repaid to Robbins Lane a substantial portion of the funds that he withdrew, which were, in turn, repaid to investors.

d. **Payments for Homes for Use by Family Members**.  In 2012, Robbins Lane used $94,000 to purchase a condominium that, at one point, was occupied by a relative of Matthew Rivera.  Also in 2012, Robbins Lane put a $20,000 down payment on a house where Daniel and Matthew Rivera's mother lives.  Robbins Lane did not "redevelop" the condominium or the house for resale at a profit.  Robbins Lane did not purchase or acquire rights to any properties besides these two properties.  After the Commission began investigating Robbins Lane, the condominium was sold and the proceeds were distributed to investors.

e. **Payment of Other Non-Business Expenses**.  The remaining funds raised from investors were paid to associates of Daniel Rivera, or were used to pay other non-business expenses, including, New York Jets tickets, New York Yankees tickets, college tuition and sorority dues for Daniel Rivera's daughter, expenses relating to Daniel Rivera's insurance business, and payments of personal credit card and cable bills.

30. Daniel Rivera and Matthew Rivera concealed the misuse of investor funds by submitting false tax returns for Robbins Lane from 2008 through 2014, which Daniel Rivera helped prepare and Matthew Rivera signed.  Among other things, the tax returns failed to disclose that Robbins Lane raised money from and owed money to investors.

### FIRST CLAIM FOR RELIEF
**Fraud – Violations of Securities Act Section 17(a)**
**[15 U.S.C. § 77q(a)]**
**(Against Daniel Rivera)**

31. Paragraphs 1 through 30 are realleged and incorporated by reference herein.

32. Daniel Rivera, by engaging in the conduct described above, directly or indirectly, in connection with the offer or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange:

a. knowingly or recklessly employed devices, schemes, or artifices to defraud;

    b. knowingly, recklessly or negligently obtained money or property by means of untrue statements of material fact or omissions to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    c. knowingly, recklessly or negligently engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

33. By engaging in the conduct described above, Daniel Rivera violated, and unless restrained and enjoined will in the future violate, Sections 17(a)(1), (2), and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (2), and (3)].

**SECOND CLAIM FOR RELIEF**
**Fraud – Violations of Securities Act Sections 17(a)(1) and (3)**
**[15 U.S.C. §§ 77q(a)(1) & (3)]**
**(Against Matthew Rivera and Robbins Lane)**

34. Paragraphs 1 through 30 are realleged and incorporated by reference herein.

35. Matthew Rivera and Robbins Lane, by engaging in the conduct described above, directly or indirectly, in connection with the offer or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange:

    a. knowingly or recklessly employed devices, schemes, or artifices to defraud; and

    b. knowingly, recklessly or negligently engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

36. By engaging in the conduct described above, Matthew Rivera and Robbins Lane violated, and unless restrained and enjoined will in the future violate, Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)].

## THIRD CLAIM FOR RELIEF
### Fraud – Violations of Exchange Act Section 10(b) and Rule 10b-5
### [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]
### (Against Daniel Rivera)

37. Paragraphs 1 through 30 are realleged and incorporated by reference herein.

38. Daniel Rivera, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

    a. employed devices, schemes, or artifices to defraud;

    b. made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

    c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

39. By engaging in the conduct described above, Daniel Rivera violated, and unless restrained and enjoined will in the future violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b), and (c) thereunder [17 C.F.R. §§ 240.10b-5(a), (b), and (c)].

## FOURTH CLAIM FOR RELIEF
### Fraud – Violations of Exchange Act Section 10(b) and Rules 10b-5(a) and (c)
### [15 U.S.C. § 78j(b) and 17 C.F.R. §§ 240.10b-5(a) and (c)]
### (Against Matthew Rivera and Robbins Lane)

40. Paragraphs 1 through 30 are realleged and incorporated by reference herein.

41. Matthew Rivera and Robbins Lane, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

    a. employed devices, schemes, or artifices to defraud; and

    b. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

42. By engaging in the conduct described above, Matthew Rivera and Robbins Lane violated, and unless restrained and enjoined will in the future violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

## FIFTH CLAIM FOR RELIEF
### Equitable Claim Against Relief Defendants Daniel Rivera Inc. and Rivera & Associates

43. Paragraphs 1 through 30 are realleged and incorporated by reference herein.

44. Relief Defendants Daniel Rivera Inc. and Rivera & Associates obtained money, property or assets which are the proceeds, or are traceable to the proceeds, of the unlawful activity alleged above.

45. Relief Defendants Daniel Rivera Inc. and Rivera & Associates have no legitimate claims to these ill-gotten gains.

46.	The Commission is entitled to an order requiring Relief Defendants Daniel Rivera Inc. and Rivera & Associates to disgorge, jointly and severally with Daniel Rivera, the amount of proceeds received by them.

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court:

A.	Permanently enjoin Daniel Rivera from violating, directly or indirectly, Sections 17(a) of the Securities Act; Section 10(b) of the Exchange Act; and Exchange Act Rule 10b-5;

B.	Permanently enjoin Matthew Rivera and Robbins Lane from violating, directly or indirectly, Sections 17(a)(1) and (3) of the Securities Act; Section 10(b) of the Exchange Act; and Exchange Act Rules 10b-5(a) and (c);

C.	Order Daniel Rivera, Matthew Rivera, Daniel Rivera Inc. and Rivera & Associates to disgorge the ill-gotten gains obtained as a result of the conduct alleged in this Complaint, with prejudgment interest;

D.	Order Daniel Rivera and Matthew Rivera to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

   E.  Grant such further relief as the Court may deem just and appropriate.

Dated this 24th day of March, 2016

                */s/ Alfred A. Day*
                Alfred A. Day
                Massachusetts Bar No. 654436
                Division of Enforcement
                Securities and Exchange Commission
                100 F Street, N.E.
                Washington, D.C. 20549
                Tel:  (202) 551-4702
                Fax: (202) 772-9292
                Email: DayA@sec.gov

Of Counsel:
Lisa Weinstein Deitch
California Bar No. 137492
Ian Dattner
New York Bar No. 4411187
Malgorzata Spangenberg
District of Columbia Bar No. 983403
Division of Enforcement
Securities and Exchange Commission